UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at KNOXVILLE

| | | |
|---|---|---|
| SHIRLEY TAYLOR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v | ) | No. 3:09-cv-318 |
| | ) | Chief Judge Curtis L. Collier |
| OFFICE OF REPRESENTATIVE | ) | |
| JOHN J. DUNCAN, JR., | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM**

In this law suit against a sitting member of the United States Congress the Court is called upon to examine and determine sensitive and difficult issues regarding the internal personnel decisions of a coordinate branch of government and the protections afforded members of Congress by the United States Constitution in members' performance of their legislative duties. Specifically the Court now has before it a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) filed by Defendant Office of Representative John J. Duncan, Jr.[1] ("Defendant") (Court File No. 9). The Court has carefully reviewed the motion to dismiss and the supporting documents (Court File No. 9), the response filed by Plaintiff Shirley Taylor ("Plaintiff") (Court File No. 16), the reply filed by Defendant (Court File No. 19), the sur-reply filed by Plaintiff (Court File No. 24), and the applicable law. Taking into account the sensitivity of the issues presented, for following reasons, the Court will **DENY** the motion (Court File No. 9).

---

[1] Congressman Duncan fills the congressional seat for the Second Congressional District of Tennessee.

## I. RELEVANT FACTS

Plaintiff filed a complaint on July 17, 2009, alleging violations of the Congressional Accountability Act ("CAA"), 2 U.S.C. §§ 1311, which incorporates the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 626 *et seq.*, the Rehabilitation Act of 1973, 29 U.S.C. §§ 791 *et seq.*, and the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq*. According to Plaintiff, she was discriminated against based on her age and alleged disability.

Plaintiff worked for Representative John J. Duncan, Jr. ("Congressman Duncan") from March 1999 to June 2009 as an Assistant Staffer in the Knoxville District Office. Although the parties disagree as to Plaintiff's level of involvement in legislative activities, Plaintiff clearly had contact with constituents. According to Plaintiff, she documented problems or requests from constituents, but transferred calls to Congressman Duncan's Washington, D.C., office whenever a constituent called about a legislative issue. She states she never discussed legislative issues with constituents. Her duties included writing letters of congratulations or condolence, ordering supplies, clipping newspaper articles, answering the phone, opening mail, and running errands. She also worked on constituent concerns regarding non-legislative issues. Defendant disputes Plaintiff's description of her job duties and contends she also was expected to speak to constituents about their opinions and questions on legislative issues. According to Defendant, Plaintiff gathered information from constituents about legislative issues and conveyed this information to Congressman Duncan. This information was used in deciding how to vote on legislation, drafting statements, and deciding which legislation to propose.

Plaintiff contends she was repeatedly harassed by her coworkers because of her age. In addition, Plaintiff asserts her supervisor erroneously believed she had Alzheimer's disease. Plaintiff

was informed she would retire in June 2009, although she alleges she had no such plans. Bob Griffitts ("Griffitts"), Congressman Duncan's Chief of Staff, told Plaintiff she would be replaced by a much younger member of the Washington, D.C., staff. Plaintiff contacted the Congressional Accountability Office to challenge the decision to terminate her. On June 8, 2009, Plaintiff received a letter from Griffitts stating she had told him she would retire in June 2009. Plaintiff's employment was terminated effective June 30, 2009, and her last day of work was June 16, 2009, her 66th birthday. She alleges her termination was due to her age and perceived disability.

Defendant contends Plaintiff told Griffitts she planned to retire, but changed her mind after he announced her replacement. According to Defendant, Plaintiff was not allowed to rescind her resignation due to substandard work, which included inability to multitask, refusing to answer phones, getting information wrong, and being unpleasant to coworkers.

## II. STANDARD OF REVIEW

Defendant's motion to dismiss under Fed. R. Civ. P. 12 is premised on the absolute immunity extended to legislators in their legislative functions provided by the Speech or Debate Clause in the Constitution, U.S. Const. art. I, § 6, cl. 1. Defendant references both Fed. R. Civ. P. 12(b)(1) and (b)(6) in the motion and does not address whether the standard for dismissal based on subject matter jurisdiction or the standard for failure to state a claim should apply. The appropriate standard of review can be critical to the outcome of a motion to dismiss asserting immunity. *Compare Walker v. Jones*, 733 F.2d 923, 933 (D.C. Cir. 1984) (reversing the judgment of the district court, which granted the defendant's motion to dismiss, finding the plaintiff stated a claim), *with id.* at 935 (MacKinnon, J., dissenting) (concluding the judgment should be affirmed, using the standard for

jurisdictional motions to dismiss). As discussed below, the Court concludes the standard for Fed. R. Civ. P. 12(b)(6) is consistent with the purpose and application of absolute immunity under the Speech or Debate Clause. However, since both parties submitted matters outside the pleadings, the Court will treat the motion as one for summary judgment.

### A. Standard of Review for Speech or Debate Clause Motions to Dismiss

Although absolute immunity under the Speech or Debate Clause has been referred to as a "jurisdictional bar," *see, e.g., Fields v. Office of Johnson*, 459 F.3d 1, 13 (D.C. Cir. 2006), it is more appropriately characterized as a defense to suit. *Powell v. McCormack*, 395 U.S. 486, 503, 512 (1969) (describing legislative immunity as a bar to judicial review of certain legislative acts and finding the district court clearly had subject matter jurisdiction); *compare Cady v. Arenac County*, 574 F.3 334, 344 (6th Cir. 2009) ("The Sixth Circuit has largely followed the 'jurisdictional bar' approach [for eleventh amendment immunity] in *Edelman* by holding that a federal court 'can raise the question of sovereign immunity sua sponte because it implicates important questions of federal-court jurisdiction and federal-state comity.'" (quoting *S&M Brands, Inc. v. Cooper*, 527 F.3d 500, 507 (6th Cir. 2008)), *with Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993) ("The official seeking absolute immunity bears the burden of showing that such immunity is justified for the function in question." (quoting *Burns v. Reed*, 500 U.S. 478, 486 (1991))). In the two cases where immunity under the Speech or Debate Clause was asserted in an employment case, the Supreme Court did not dispute the district court's subject matter jurisdiction. In *Davis v. Passman*, the Court treated Speech or Debate Clause immunity as a defense to a cause of action, 442 U.S. 228, 236 n.11 (1979), and determined "[i]t is clear that the District Court had jurisdiction" to consider the claim. *Id.* at 236. Almost twenty years later, the Court declined to challenge the district court's "determination that

4

jurisdiction attaches despite a claim of Speech or Debate Clause immunity." *Office of Dayton v. Hanson*, 550 U.S. 511, 514 (2007).

Other official immunities do not divest the court of jurisdiction over the case. The threshold issue of whether absolute immunity applies is based on the facts in the complaint. *Kalina v. Fletcher*, 522 U.S. 118, 122 (1997) ("In determining immunity, we accept the allegations of respondent's complaint as true."); *Buckley v. Fitzsimmons*, 509 U.S. 259, 261 (1993) (assuming the plaintiff's allegations are true and "they allege constitutional violations for which § 1983 provides a remedy" in deciding whether prosecutors were entitled to absolute immunity from liability). In *Doe v. McMillan*, 412 U.S. 306, 318-20 (1973), the Supreme Court did not distinguish a procedural difference in the analysis of immunity under the Speech and Debate Clause and common law official immunity, assessing whether immunity would apply based on the facts alleged in the complaint. *Id.* at 317-18; *see also Dombrowski v. Eastland*, 387 U.S. 82, 85 (1967) (holding the "controverted evidence in the record . . . affords more than merely colorable substance to petitioners' assertions" and "this showing is sufficient to entitle petitioners to go to trial" against a United States Senate subcommittee's counsel despite the assertion of immunity under the Speech or Debate Clause).

Even if legislative immunity does not shield a defendant from a lawsuit, it can later operate at trial as an evidentiary privilege. *United States v. Gillock*, 445 U.S. 360, 369-70 (1980) (noting the evidentiary privilege under the Speech or Debate Clause protects federal legislators); *United States v. Gravel*, 408 U.S. 606, 628-29 (1972) (limiting the questions that could be asked of a senator and his aide in a grand jury investigation); *United States v. Johnson*, 383 U.S. 169, 173 (1966) (noting the Speech or Debate Clause "clearly proscribes at least some of the evidence taken during trial."); *Bastien v. Office of Senator Campbell*, 390 F.3d 1301, 1303 (10th Cir. 2004) (holding

5

an employment discrimination claim was not barred by the Speech or Debate Clause, but noting evidence questioning legislative actions could be inadmissible). Since the immunity also functions as an evidentiary privilege, it works as a shield, protecting a legislator from certain questions and causes of actions, rather than a jurisdictional bar, divesting the court of subject matter jurisdiction.

Furthermore, although the party seeking to establish jurisdiction generally has the burden of proof, *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990), the defendant has the burden of proving the existence of legislative immunity. *Canary v. Osborn*, 211 F.3d 324, 328 (6th Cir. 2000) (citing *Kamplain v. Curry Bd. of Comm'rs*, 159 F.3d 1248, 1251 (10th Cir. 1998)). In light of these considerations, the Court determines a motion asserting absolute immunity pursuant to the Speech or Debate Clause should be assessed as a motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6).

### B. Conversion to a Motion for Summary Judgment

Although the Court has determined the motion should be treated as a request for relief under Rule 12(b)(6), the inquiry does not end there. Pursuant to Rule 12(d), where a motion under Rule 12(b)(6) relies on matters outside the pleadings, the court must either exclude such matters or treat the motion as one for summary judgment under Rule 56. Where the court considers materials outside the pleadings, "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). Because the Court finds the parties had sufficient opportunity to present materials, the Court will treat the motion to dismiss as a motion for summary judgment.

A court can adjudicate a motion to dismiss as a motion for summary judgment without giving formal notice to the opposing party where that party is unlikely to be surprised by the proceedings.

*See Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 204 (6th Cir. 1998). Where both parties submit materials extrinsic to the pleadings, they have "sufficient notice that the district court could consider this outside material when ruling on the issues presented in the [] motion to dismiss and could convert it into a motion for summary judgment." *Shelby County Health Care Corp. v. Southern Council of Indus. Workers Health & Welfare Trust Fund*, 203 F.3d 926, 932 (6th Cir. 2000).

The Court finds Plaintiff had ample opportunity to respond to the materials presented by Defendant. The motion to dismiss, which contained several attachments of materials outside the pleadings, was filed on November 16, 2009 (Court File No. 9). The amount of time for Plaintiff to file a response to the motion to dismiss was extended twice (Court File Nos. 13, 15). Plaintiff's response was filed on January 19, 2010, and included several attachments of matters outside the pleadings (Court File No. 16). Defendant replied on February 4, 2010 (Court File No. 19) and the Court granted Plaintiff's motion to file a sur-reply (Court File No. 23), which was filed on March 2, 2010 (Court File No. 24). Due to the limited scope of Defendant's motion, this is not a case where additional discovery is necessary to adequately respond to a summary judgment motion. Since Plaintiff did respond to the affidavits submitted by Defendant, the Court finds Plaintiff had constructive notice the motion could be converted to one for summary judgment and formal notice is unnecessary.

    **C.**    **Summary Judgment Standard of Review**

Summary judgment is proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party must demonstrate no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323

(1986); *Leary v. Daeschner*, 349 F.3d 888, 897 (6th Cir. 2003). That is, the moving party must provide the grounds upon which it seeks summary judgment, but does not need to provide affidavits or other materials to negate the non-moving party's claims. *Celotex*, 477 U.S. at 323.

The Court views the evidence, including all reasonable inferences, in the light most favorable to the non-movant. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis Inc.*, 253 F.3d 900, 907 (6th Cir. 2001). However, the non-movant is not entitled to a trial based solely on its allegations, and must submit significant probative evidence to support its claims. *Celotex*, 477 U.S. at 324; *McLean v. Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). The moving party is entitled to summary judgment if the non-movant fails to make a sufficient showing on an essential element for which it bears the burden of proof. *Celotex*, 477 U.S. at 323. In short, if the Court concludes a fair-minded jury could not return a verdict in favor of the non-movant based on the record, the Court may enter summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986); *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

## III. DISCUSSION

Defendant relies upon the Speech or Debate Clause in his contention Plaintiff cannot proceed with her employment discrimination claims. Defendant asserts the Clause affords Defendant immunity from Plaintiff's claims since the complaint could not be adjudicated without inquiry into legislative acts, or the motivation for such acts. Plaintiff, unsurprisingly, disagrees with this interpretation of the Clause and argues the claims can proceed. In deciding this matter, the Court views the evidence in the light most favorable to Plaintiff and gives her the benefit of all reasonable

inferences. Using this standard, as the Court must, the Court concludes Plaintiff's termination is not protected by the Speech or Debate Clause and the adjudication of the case will not necessarily involve inquiry into legislative acts, nor unnecessary intrusion into the working of the Legislative Branch.[2] Thus, the Court will deny Defendant's motion.

### A.  Speech or Debate Clause

The Speech or Debate Clause states "for any Speech or Debate in either House, [members of Congress] shall not be questioned in any other Place." U.S. Const. art. I, § 6, cl. 1. The CAA, which applies the protections of eleven employment statutes to congressional employees, 2 U.S.C. § 1302(a), expressly retains Speech or Debate Clause immunity for members of Congress. *Id.* § 1413.

The purpose of the Speech or Debate Clause is "to prevent intimidation by the executive and accountability before a possibly hostile judiciary." *Johnson*, 383 U.S. at 181. It not only "provides a defense on the merits, but also protects a legislator from the burden of defending himself." *Powell v. McCormack*, 395 U.S. 486, 502-03 (1969). In doing so, the Speech or Debate Clause "insures that legislators are free to represent the interests of their constituents without fear that they will be later called to task in the courts for that representation." *Id.* at 503. The protection afforded by the Speech or Debate Clause is not "simply for the personal or private benefit of Members of Congress, but to protect the integrity of the legislative process by insuring the independence of individual

---

[2]The Court is very sensitive to Defendant's concerns of Judicial Branch intrusion into the personnel decisions of a coordinate branch of government. By passing the CAA, however, the Congress choose to subject itself to lawsuit being filed in the Judicial Branch and that branch treating such cases as all other cases brought by litigants with certain limited exceptions. If Judicial Branch intrusions become unduly burdensome on Congress, then Congress can remedy the problem by restoring its status to that that existed prior to the passage of the CAA.

9

legislators." *United States v. Brewster*, 408 U.S. 501, 507 (1972). The Speech or Debate Clause preserves legislative independence and separation of powers. *Id.* at 508; *Eastland v. United States Servicemen's Fund*, 421 U.S. 491, 502 (1975).

The Speech or Debate Clause does not narrowly protect only words spoken in debate, but, from its earliest construction, has also applied "to written reports presented in that body by its committees, to resolutions offered, which, though in writing, must be reproduced in speech, and to the act of voting, whether it is done vocally or by passing between the tellers." *Kilbourn v. Thompson*, 103 U.S. 168, 204 (1881). Thus, "committee hearings are protected, even if held outside the Chambers; committee reports are also protected." *Hutchinson v. Proxmire*, 443 U.S. 111, 124 (1979). The Clause also extends to certain powers to investigate, such as the issuance of a subpoena. *Eastland*, 421 U.S. at 504.

Despite the practical, rather than literal, reading of the Speech or Debate Clause, the objective of the immunity remains "protecting only legislative activities." *Hutchinson*, 443 U.S. at 125. Thus, Speech or Debate Clause immunity reaches "only those things 'generally done in a session of the House by one of its members in relation to the business before it,' or things 'said or done by him, as a representative, in the exercise of the functions of that office.'" *Brewster*, 408 U.S. at 512-13 (quoting *Kilbourn*, 103 U.S. at 204, and *Coffin v. Coffin*, 4 Mass. 1, 27 (1808)) (internal citations omitted).

> The heart of the Clause is speech or debate in either House. Insofar as the Clause is construed to reach other matters, they must be an integral part of the deliberative and communicative processes by which Members participate in committee and House proceedings with respect to the consideration and passage or rejection of proposed legislation or with respect to other matters which the Constitution places within the jurisdiction of either House.

*Gravel v. United States*, 408 U.S. 606, 625 (1972). "[O]nce it is determined that Members are acting

within the 'legitimate legislative sphere' the Speech or Debate Clause is an absolute bar to interference." *Eastland*, 421 U.S. at 503.

"In its narrowest scope, the Clause is a very large, albeit essential, grant of privilege," however, "the shield does not extend beyond what is necessary to preserve the integrity of the legislative process." *Brewster*, 408 U.S. at 516-17. Thus, the Speech or Debate Clause does not reach conduct "that is in no wise related to the due functioning of the legislative process." *United States v. Johnson*, 383 U.S. 169, 173 (1966) (holding attempts to influence the Department of Justice were not protected by the Speech or Debate Clause). Activities "that are casually or incidentally related to legislative affairs but not a part of the legislative process itself" are not immune under the Speech or Debate Clause. *Brewster*, 408 U.S. at 528. Likewise, although aides also enjoy Speech or Debate Clause protection if the "services would be immune legislative conduct if performed by the Senator [or Member of Congress] himself," the immunity does not extend to "a variety of services characteristically performed by aides for Members of Congress, even though within the scope of their employment." *Gravel v. United States*, 408 U.S. 606, 622 (1972).

The Court distinguishes between "political" acts, which are not protected, and "legislative" acts, which are protected. *Brewster*, 408 U.S. at 512. "Voting and preparing committee reports are the individual and collective expressions of opinion within the legislative process" and are protected by the Speech or Debate Clause. *Hutchinson*, 443 U.S. at 133. "Newsletters and press releases, by contrast, are primarily means of informing those outside the legislative forum; they represent the views and will of a single Member" and are unprotected. *Id.* Although legitimate activities, "'errands' performed for constituents, the making of appointments with Government agencies, assistance in securing Government contracts, preparing so-called 'news letters' to constituents, news

releases and speeches delivered outside the Congress" are not protected by the Speech or Debate Clause. *Brewster*, 408 U.S. at 512. "That Senators generally perform certain acts in their official capacity as Senators does not necessarily make all such acts legislative in nature." *Gravel*, 408 U.S. at 625; *see also Doe v. McMillan*, 412 U.S. 306, 313 (1973) ("Our cases make perfectly apparent, however, that everything a Member of Congress may regularly do is not a legislative act within the protection of the Speech or Debate Clause.").

Once applied, the immunity afforded under the Speech or Debate Clause is absolute. *Eastland*, 421 U.S. at 509-510. "The claim of an unworthy purpose does not destroy the privilege." *Johnson*, 383 U.S. at 180 (quoting *Tenney v. Brandhove*, 341 U.S. 367, 371 (1951)) (internal quotation marks omitted).

While the Speech or Debate Clause precludes questioning a legislative activity, or the motives underlying a legislative activity, where a case can be "wholly purged of elements offensive to the Speech or Debate Clause," it will not be dismissed. *Johnson*, 383 U.S. at 185; *see also Brewster*, 408 U.S. at 525 (holding prosecution of a Congressman was not prohibited by the Speech or Debate Clause where "no inquiry into legislative acts or motivation for legislative acts is necessary for the Government to make out a prima facie case."). Thus, where a case can be proved without "any showing of how [a legislator] acted, voted or decided," *United States v. Helstoski*, 442 U.S. 477, 489 (1979) (quoting *Brewster*, 408 U.S. at 527) (internal quotation marks omitted) (alterations in original), it can proceed.

**B.    Immunity in Employment Cases**

Although neither the Supreme Court nor the Court of Appeals for the Sixth Circuit have directly confronted the issue of whether the Speech or Debate Clause precludes an employment case

12

against a Member of Congress, other Circuits have determined the protections afforded by the Speech or Debate Clause in a lawsuit alleging employment discrimination. These courts have unanimously determined the Speech or Debate Clause does not mandate dismissal in a typical employment case.

The Supreme Court indirectly touched on Speech or Debate Clause immunity in the context of an employment case in *Davis v. Passman*, 442 U.S. 228 (1979), where it held a member of a congressman's staff could proceed with her claim of gender discrimination under the Fifth Amendment. Although not deciding the question of whether the congressman's conduct was shielded by the Speech or Debate Clause, which the lower court did not consider, the Court held "judicial review of congressional employment decisions is constitutionally limited only by the reach of the Speech or Debate Clause" and "federal legislators should be exempted from litigation if their conduct is in fact protected by the Clause." *Id.* at 236 n.11. In a recent case, the Court declined to exercise discretionary certiorari jurisdiction over the lower court's affirmance of the district court order denying a motion to dismiss and employment discrimination case on Speech or Debate Clause grounds, stating, "the D.C. Circuit is no longer in obvious conflict with any other Circuit on the application of the Speech or Debate Clause to suits challenging the personnel decisions of Members of Congress." *Office of Senator Dayton v. Hanson*, 550 U.S. 511, 515 (2007).

In *Fields v. Office of Johnson*, 459 F.3d 1 (D.C. Cir. 2006), the Court of Appeals for the D.C. Circuit affirmed the lower court's denial of a motion to dismiss on Speech or Debate Clause immunity. In doing so, the D.C. Circuit overruled its prior case of *Browning v. Clerk, U.S. House of Representatives*, 789 F.2d 923 (D.C. Cir. 1986), in light of subsequent Supreme Court precedent and the Speech or Debate Clause employment case from the Court of Appeals for the Tenth Circuit,

13

*Bastien v. Office of Sen. Campbell*, 390 F.3d 1301 (10th Cir. 2004). *Fields*, 459 F.3d at 11 (holding the *Browning* holding was "inconsistent with the [Supreme] Court's practice of being 'careful not to extend the scope of the protection further than its purposes require.'" (quoting *Forrester v. White*, 484 U.S. 219, 224 (1988)). The D.C. Circuit determined the Speech or Debate Clause would preclude liability where the complaint predicates the liability on protected conduct. *Id.* at 13. Although the court found the challenged personnel decisions were not legislative acts under the Speech or Debate Clause, it noted the Clause could still "preclude some relevant evidence" to the extent inquiry into the motivation for the personnel decision required inquiry into legislative acts. *Id.* at 14 (explaining how the Speech or Debate Clause also functions as an evidentiary privilege). Thus, "a plaintiff who seeks to prevail by quarreling with the defendant's statements about activity protected by the Speech or Debate Clause must fail." *Id.* at 17.

In assessing the correct scope of the Speech or Debate Clause in the employment context, the D.C. Circuit noted "The Speech or Debate Clause protects conduct that is integral to the legislative *process*, not a Member's legislative *goals*." *Id.* at 12. Thus, "[l]egislative immunity under the Speech or Debate Clause is limited to matters that are part of, or integral to the due processing of the legislative process. It is not enough that a Member's conduct is within the outer perimeter of the legislative process." *Id.*

In an earlier decision by the D.C. Circuit, the court also found an employment discrimination claim was not barred by the Speech or Debate Clause, noting, "Activities integral to the legislative process may not be examined, but peripheral activities not closely connected to the business of legislating do not enjoy Speech or Debate shelter." *Walker v. Jones*, 733 F.2d 923, 929 (D.C. Cir. 1984) (internal citations omitted). The court found the decision to terminate a food service manager

"was not . . . essential to the act of legislating and hence [could] not be deemed within the legislative sphere." *Id.* at 930 (internal quotation marks omitted) (alterations in original).

The Court of Appeals for the Tenth Circuit held an employee's employment-discrimination claim was not barred by the Speech or Debate Clause because the claim did not question legislative actions. *Bastien v. Office of Sen. Campbell*, 390 F.3d 1301, 1315 (10th Cir. 2004). In a fact situation similar to that presented in this case, the Tenth Circuit reversed the district court's ruling granting a motion to dismiss based on Speech or Debate Clause immunity, holding the plaintiff's "discussions with constituents and others were not 'an integral part of the deliberative and communicative process by which Members participate in committee and House proceedings.'" *Id.* at 1319 (quoting *Gravel*, 408 U.S. at 625). The plaintiff's job duties included "gathering and conveying to [the Member of Congress] information critical to [his] legislative agenda." *Id.* at 1305 (quoting the district court's opinion, *Bastien v. Campbell*, 209 F. Supp. 2d 1101, 1105 (D. Colo. 2002)) (internal quotation marks omitted). The Tenth Circuit, in a thorough and well-reasoned opinion, stated:

> As we read the Supreme Court's opinions on the Speech or Debate Clause, the Clause protects only "legislative" acts by a member of Congress or an aide, and only official, formal acts (or perhaps their functional equivalent) deserve the adjective "legislative." In particular, Plaintiff's informal contacts with constituents and other sources of information and opinion were not legislative in nature.

*Id.* at 1305-06. The court proceeded to carefully review the relevant Supreme Court cases, noting "the [Supreme] Court viewed 'gathering of information for a hearing' in *Dombrowski* as not being a legislative act." *Id.* at 1311. In summarizing Supreme Court precedent, the Tenth Circuit noted the Clause broadly encompasses "all formal actions in the official business of Congress, including voting, conducting hearings, issuing reports, and issuing subpoenas," as well as the functional

15

equivalents of the acts. *Id.* at 1314-15. Such legislative acts cannot be the basis for liability or introduced as evidence in judicial proceedings. *Id.* at 1315. However, the protections of the Speech or Debate Clause do not extend beyond "the limits of formal, official proceedings." *Id.*

**C.     Analysis**

Defendant does not contend the personnel decision in itself is protected by Speech or Debate Clause immunity,[3] but asserts the case cannot proceed without inquiring into protected legislative acts or the motivations of the acts. Defendant argues Plaintiff's job duties included legislative acts, such as questioning constituents about their opinions and giving the information to Congressman Duncan for use in core legislative acts. Defendant intends to prove the non-discriminatory reason for Plaintiff's termination was that she was not allowed to rescind her resignation because of her poor job performance. According to Defendant, in order for Plaintiff to prove this reason is pretext, Plaintiff will necessarily inquire into protected legislative acts and the motivation for such acts.

An employee can establish discrimination via direct or circumstantial evidence. In order to succeed on a claim under the ADEA, a plaintiff must prove age was the but-for cause of the adverse employment action. *Gross v. FBL Fin. Services, Inc.*, -- U.S. --, 129 S. Ct. 2343, 2351 n.4 (2009). Direct evidence is "evidence that proves the existence of a fact without requiring any inferences." *Rowan v. Lockheed Martin Energy Sys., Inc.*, 360 F.3d 544, 548 (6th Cir. 2004). Circumstantial evidence may be used to demonstrate age discrimination under the *McDonnell Douglas* burden-shifting framework. *Martin v. Toledo Cardiology Consultants, Inc.*, 548 F.3d 405, 410 (6th Cir.

---

[3]The termination of an individual is generally an administrative decision, not entitled to immunity. *Canary*, 211 F.3d at 330 (finding "the [adverse employment] action in substance was not essentially and clearly legislative"); *see also Forrester v. White*, 484 U.S. 219, 228 (1988) (holding a judge was "acting in an administrative capacity when he demoted and discharged [the plaintiff]" and, thus, was not entitled to judicial immunity).

16

2008). Under this analysis, Plaintiff must show a prima facie case of discrimination: "1) she was a member of the protected class, 2) she was subject to an adverse employment action, 3) she was qualified for the position, and 4) she was replaced by someone outside the protected class." *Id.* The burden then shifts to Defendant to proffer a "legitimate, nondiscriminatory reason" for its actions. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Plaintiff must then establish the Defendant's reason was pretext. To do so, Plaintiff must generally show "the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." *Blair*, 505 F.3d at 532 (quoting *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 576 (6th Cir. 2003) (en banc)) (internal quotation marks omitted).

In order to establish a prima facie case of discrimination under the Rehabilitation Act, which uses the standards from the ADA, 29 U.S.C. § 791(g), a plaintiff must show "(1) she has a disability; (2) she is otherwise qualified; and (3) she is being excluded from participation in, being denied benefits of, or being subjected to discrimination under the program solely because of her disability." *Tucker v. Tennessee*, 539 F.3d 526, 532 (6th Cir. 2006) (quoting *Dillery v. City of Sandusky*, 389 F.3d 562, 567 (6th Cir. 2003)). A person is disabled under the ADA if she has "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2). The *McDonnell Douglas* burden-shifting framework also applies to claims under the Rehabilitation Act. *Plautz v. Potter*, 156 F. App'x 812, 816 (6th Cir. 2005); *see also Talley v. Family Dollar Stores of Ohio, Inc.*, 542 F.3d 1099, 1105 (6th Cir. 2008) (applying *McDonnell Douglas* to an ADA claim).

17

In this case, Plaintiff intends to show, despite being qualified for the position, she was terminated due to her age or perceived disability. Defendant contends Plaintiff's termination was a result of her poor job performance, which Defendant argues included legislative acts. Plaintiff will apparently rebut this assertion by showing Defendant's proffered reason has no basis in fact and she performed her job well. Thus, the question at this venture is whether the case will involve impermissible inquiry into protected legislative acts.

Defendant argues Plaintiff's duty of speaking with constituents and relaying their opinions on legislative matters to legislative aides constitutes a legislative act. The Court disagrees. Such a determination is in conflict with Supreme Court precedent limiting Speech or Debate Clause immunity to core legislative functions. The Supreme Court has repeatedly rejected attempts to expand the scope of the protection, stating, "The only reasonable reading of the Clause, consistent with its history and purpose, is that it does not prohibit inquiry into activities that are casually or incidentally related to legislative affairs, but not a part of the legislative process itself." *Brewster*, 408 U.S. at 528. Viewing the record in the light most favorable to the plaintiff, her duties included taking notes on conversations with constituents and passing these messages along to other members of Congressman Duncan's staff, who were actually involved in researching legislative issues. To the extent Plaintiff actually discussed legislative issues with constituents, it was to identify the constituents' opinions in order to accurately convey them to Congressman Duncan and legislative aides. Such activities are clearly only "casually or incidentally related to legislative affairs," *id.*, and not protected by the Speech or Debate Clause.

In addition, the Court does not find support for the proposition legislative information gathering is as protected under the Speech or Debate Clause as Defendant asserts. Although the

Court has protected the power to investigate, it has only done so in the official context. Thus, the Court upheld the issuance of subpoenas by a subcommittee in *Eastland*, stating the "power to investigate and to do so through compulsory process plainly falls" within the sphere of legitimate legislative activity. 421 U.S. at 504. In *Dombrowski*, however, the Court determined the subcommittee counsel, who was gathering information for a subcommittee hearing, was not immune. 387 U.S. at 84; *see also Hutchinson*, 443 U.S. at 132-33 (finding "congressional efforts to inform itself through committee hearings are part of the legislative function," whereas "transmittal of such information by individual Members in order to inform the public and other Members is not a part of the legislative function."). As the Tenth Circuit noted, "[t]he Court's discussions in its opinions of the importance of information gathering is for the purpose of establishing that such activity is a proper congressional function and, when conducted by a committee, should be treated just as voting and debating legislation." *Bastien*, 390 F.3d at 1316.

The informal contact with constituents in this case is more akin to unprotected political activities, such as the distribution of newsletters, than "the deliberative and communicative processes by which the Members participate in committee and House proceedings with respect to the consideration and passage or rejection of proposed legislation." *Bastien*, 390 F.3d at 1315. "[T]he privilege available to the aide is confined to those services that would be immune legislative conduct if performed by the Senator himself." *Gravel*, 408 U.S. at 622. To hold Plaintiff's job duties included protected legislative acts would extend Speech or Debate Clause immunity to even the most casual conversations between a legislator and a constituent, as long as it included some discussion of politics. Such an interpretation is contrary to the Supreme Court's intent to "extend[] the privilege to matters beyond pure speech and debate in either house [] 'only where necessary to

19

prevent indirect impairment of such deliberations.'" *Id.* at 625 (quoting *United States v. Doe*, 455 F.2d 753, 760 (1st Cir. 1972)). Inquiry into the quality of Plaintiff's performance of these duties poses no threat to legislative independence.

Having determined Plaintiff's claims do not rest wholly upon legislative acts and that she has carried her burden of demonstrating a prima facie case, it would be improper for the Court to dismiss her case. The Court also concludes, based upon giving her the benefit of viewing the evidence in the light most favorable to her, that her evidence is sufficient to overcome the nondiscriminatory reason advanced by Defendant. At this stage of the litigation, this decision does not predict what evidence will be admissible at any trial nor whether Plaintiff could prevail at a trial on the merits. It may be that some of Plaintiff's evidence at trial would be ruled inadmissible for implicating the Speech or Debate Clause.

**IV.    CONCLUSION**

For the reasons stated, the Court will **DENY** Defendant's motion to dismiss (Court File No. 9).

An Order shall enter.

/s/
**CURTIS L. COLLIER
CHIEF UNITED STATES DISTRICT JUDGE**