UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| SHIRLEY TAYLOR, | ) |
| --- | --- |
| Plaintiff, | ) |
| | ) No. 3:09-CV-318 |
| v. | ) |
| | ) Chief Judge Curtis L. Collier |
| OFFICE OF REPRESENTATIVE | ) |
| JOHN J. DUNCAN, JR., | ) |
| Defendant. | ) |

## **MEMORANDUM**

Before the Court is Defendant's the Office of Representative John J. Duncan, Jr. ("Defendant") motion to dismiss Count Two of the complaint for lack of subject matter jurisdiction, pursuant to Fed. R. Civ. P. 12(b)(1) (Court File No. 30). Plaintiff Shirley Taylor ("Plaintiff") has responded (Court File No. 36), and Defendant has replied (Court File No. 37). For the reasons set forth in this memorandum, the Court will **GRANT** Defendant's motion (Court File No. 30).

**I.     STANDARD OF REVIEW**

Under Fed. R. Civ. P 12(b)(1), a defendant may challenge this Court's subject matter jurisdiction through a facial attack or a factual attack. *Gentek Bldg. Prods., Inc. v. Steel Peel Litig. Trust*, 491 F.3d 320, 330 (6th Cir. 2007); *Reguli v. Guffee*, 371 F. App'x 590, 595 (6th Cir. 2010). Where there is a facial attack, the complaint should fail unless it pleads sufficient facts to establish jurisdiction. *Kardules v. City of Columbus*, 95 F.3d 1335, 1346 (6th Cir. 1996); *see also Gentek Bldg. Prods., Inc.* 491 F.3d at 330 (stating a court must take the allegation in the complaint to be true when reviewing a facial attack). On the other hand, where there is a factual attack, as Defendant asserts here, the Court must weigh conflicting evidence provided by Plaintiff and Defendant to

determine whether subject matter jurisdiction exists. *Id.* The party asserting federal jurisdiction – here Plaintiff – has the burden of proof. *Davis v. United States*, 499 F.3d 590, 594 (6th Cir. 2007); *Giesse v. Sec'y of the Dep't of Health and Human Servs.*, 522 F. 3d 697, 702 (6th Cir. 2008).

## II. BACKGROUND

The facts giving rise to this action have already been described in the Court's earlier order and memorandum denying Defendant's motion to dismiss on grounds of absolute immunity, and will therefore not be set forth in detail here. Briefly, Plaintiff filed a complaint on July 17, 2009, alleging she was terminated by Defendant in violation of the Congressional Accountability Act of 1995 ("CAA"), 2 U.S.C. §§ 1301 *et seq.*, a statute which applies certain aspects of several federal labor and employment laws to the legislative branch, including provisions of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 626 *et seq.*, the Rehabilitation Act of 1973, 29 U.S.C. §§ 791 *et seq.*, and the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq.* Count One of Plaintiff's complaint alleges age discrimination in violation of the ADEA; Count Two alleges disability discrimination in violation of the Rehabilitation Act and the ADA. Count Two is based on the "regarded as" theory of relief; that is, Plaintiff was discriminated against because she was "regarded as" having a disability – in this case Alzheimer's disease – which she did not actually have.

Early in the litigation, Defendant filed a motion to dismiss, arguing that as a legislator he enjoyed absolute immunity pursuant to the Speech or Debate Clause of the United States Constitution. U.S. Const. art I. § 6, cl. 1. The Court denied that motion, first determining absolute immunity under the Speech or Debate clause is a defense to suit rather than a jurisdictional bar – and

2

thus analyzed under the Fed. R. Civ. P. 12(b)(6) standard rather than 12(b)(1) – and then determining Plaintiff's claims did not substantially implicate the Speech or Debate clause such that dismissal would be proper.

Defendant's present motion to dismiss is advanced on an entirely different theory: Plaintiff did not satisfy a jurisdictional prerequisite to bringing suit pursuant to the CAA, namely, she did not complete counseling with the Office of Compliance with respect to Count Two, that is, the disability claim. According to Defendant, Plaintiff's failure to complete counseling with respect to Count Two is evident from official notices issued by the Office of Compliance following her counseling period, notices which reference an age discrimination claim but do not reference any claim for disability discrimination. Defendant argues Plaintiff's failure to complete counseling with respect to her disability claim deprives this Court of subject matter jurisdiction to hear this claim. Defendant acknowledges that Plaintiff did complete counseling with respect to the ADEA claim of Count One, thus the Court has subject matter jurisdiction to hear that claim.[1]

Plaintiff, for her part, argues she did request and receive counseling with the Office of Compliance for her disability claim. She urges the Court to rely on an alleged copy of the "Employee's Formal Request for Counseling" she sent to the Office of Compliance to initiate counseling – a copy which references an erroneous workplace rumor that she had Alzheimer's disease – to find she has satisfied the jurisdictional prerequisite of completing counseling on the disability discrimination claim. Defendant howls at the introduction of this document. According to Defendant, Plaintiff's submission of this document breaches the strict confidentiality requirements

---

[1] However, because the ADA allows for recovery of compensatory damages while the ADEA does not, dismissal of Count Two would sharply reduce the scope and value of this lawsuit.

of the CAA, flirting with Rule 11, and the Court should avert its gaze. Furthermore, argues Defendant, the document is unreliable, self-serving, inconclusive, and is not something Congress intended the Court to consider when determining whether the jurisdictional prerequisite of completing counseling has been satisfied.

At the heart of the parties' dispute, then, is a question of methodology: what is the methodology by which the Court can determine whether an individual has completed counseling before the Office of Compliance with respect to a particular issue? Must the Court consider only official notices issued by the Office of Compliance, or may it consider confidential communications between a complainant and the Office of Compliance, and perhaps other evidence as well? This appears to be a question of first impression in the Sixth Circuit, and one sparingly addressed in others. Upon analysis of the text and structure of the CAA, the Court concludes it must limit its review to official notices by the Office of Compliance when determining whether a Plaintiff has completed counseling for a particular issue.

## III. THE TEXT OF THE CAA

In 1995 Congress enacted the CAA, an act which confers on Congressional employees "rights and remedies drawn from various labor and employment statutes not previously applicable to the legislative branch." *Fields v. Office of Johnson*, 459 F.3d 1, 5 (D.C. Cir. 2006). Among these various labor and employment statutes are the ADEA, the Rehabilitation Act, and the ADA. *See* 2 U.S.C. § 1302(a). The Act extends jurisdiction to district courts to hear claims brought pursuant to the CAA, but tightly cabins that jurisdiction. *See Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994) (explaining that as courts of limited jurisdiction, federal courts possess "only that power

authorized by Constitution and statute"). Most notably, the Act predicates district court jurisdiction on an employee first completing a mandatory three-step process. *See* 2 U.S.C. § 1408(a).

First, within 180 days of the date of an alleged violation of a law made applicable by the CAA, an employee "shall request counseling by the Office [of Compliance]." *Id*. at § 1402(a). The Office of Compliance is an independent office within the legislative branch charged with administering the CAA. *Id*. at § 1381. The period of counseling is thirty days, "unless the employee and the Office agree to reduce this period." *Id*. at § 1402(b). At the end of the counseling period, the Office of Compliance must issue a written notice to the employee. *Id*. at § 1402(c).

Second, "no later than 15 days after receipt by the employee of notice of the end of the counseling period . . . , the covered employee who alleged a violation of a law shall file a request for mediation with the Office." *Id*. at § 1403(a). At this point, the Office of Compliance issues a notice to the employer informing it of the commencement of mediation. *See* Office Rule ("OC Rule") 2.04(c). Mediation "may include the Office, the covered employee, the employing office, and . . . shall involve meetings with the parties separately or jointly for the purpose of resolving the dispute between the covered employee and the employing office." 2 U.S.C. § 1403(a)-(b). The mediation period is thirty days, but may be extended at the joint request of the parties. *Id*. at § 1403(c). Once again, the Office must "notify in writing the covered employee and the employing office when the mediation period has ended." *Id*.

Third, between thirty and ninety days after receiving the notice of end of mediation, the employee may elect to either "file a complaint with the Office . . . , or file a civil action in accordance with [§ 1408] in the United States district court." *Id*. at § 1404. Only the latter election is at issue in this case.

5

Section 1408, which concerns the procedure should an employee elect to commence a civil action, predicates district court jurisdiction on the employee's prior completion of the three-step process :

> (a) Jurisdiction. The district courts of the United States shall have jurisdiction over any civil action commenced under [§ 1404] and this section by a covered employee who has completed counseling under [§ 1402] and mediation under [§ 1403]. A civil action may be commenced by a covered employee only to seek redress *for a violation for which the employee has completed counseling and mediation*.

*Id.* at § 1408(a) (emphasis added). Not only does this section limit district court jurisdiction to civil actions commenced by employees who have completed counseling and mediation, it also limits the scope of that jurisdiction *to the specific violations* for which the employee has completed counseling and mediation. In other words, if an employee completed counseling and mediation for claims A and B and elected to commence a civil action, the district court would have jurisdiction over claims A and B, but not over claim C.

The jurisdictional requirement that an employee complete both counseling and mediation with respect to a particular alleged violation is not one the Court can relax through equitable doctrines. Federal courts have "no authority to create equitable exceptions to jurisdictional requirements." *Bowles v. Russell*, 551 U.S. 205, 214 (2007); *see also Blackmon-Malloy v. United States Capitol Police Bd.* ("*Blackmon-Malloy II*"), 575 F.3d 699, 705 (D.C. Cir. 2009) (stating the district court was not empowered to apply the equitable doctrine of vicarious exhaustion to excuse compliance with the CAA's counseling and mediation requirements, since these requirements are jurisdictional); *Epps v. U.S. Capitol Police Bd.*, 719 F. Supp. 2d 7, 14 (D.D.C. 2010) ("Because the counseling and mediation requirements are jurisdictional prerequisites, courts have no authority to create equitable exceptions to them.") (citation omitted). Thus, in the present case, the Court's

subject matter jurisdiction over Count Two turns entirely on whether Plaintiff completed both counseling and mediation with respect to her disability claim. The Court has no discretion to apply equitable doctrines – such as futility or lack of prejudice – which might otherwise be applied in contexts where the Court's jurisdiction is not predicated on a plaintiff's compliance with pre-litigation procedures. *See, e.g. Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982) (holding that "filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court," and therefore "is subject to waiver, estoppel, and equitable tolling.").

Although § 1408(a) restricts district court jurisdiction to those "violation[s] for which the employee has completed counseling and mediation," the statutory text does not explicitly prescribe a method for the Court to determine which violations were addressed in counseling and mediation. Two possible alternatives present themselves: 1) the Court could determine which violations were addressed solely by reference to the notices issued by the Office of Compliance; or 2) the Court could "peer into" the counseling and mediation processes, and decide for itself which issues were actually addressed. Based upon the structure of the CAA, the Court concludes the former most closely adheres to Congress's intent.

### IV. THE STRUCTURE OF THE CAA

As the Court of Appeals for the D.C. Circuit explained in its insightful analysis of federal jurisdiction under the CAA, the pre-litigation requirements of counseling and mediation, "unlike agency exhaustion in other contexts, . . . are not [designed] to compile a record for judicial review but instead simply to afford the employee and the employing office an opportunity to explore and

possibly resolve the employee's claims informally." *Blackmon-Malloy II*, 575 F.3d at 711-12. Several factors indicate Congress's intent to thoroughly insulate the pre-litigation informal dispute resolution process from the oversight, and even the eye, of the courts.

First, Congress created the Office of Compliance – a body wholly within the legislative branch – to administer complaints in their pre-litigation stages. 2 U.S.C. § 1381. Second, Congress shielded the actions of the Office from almost all judicial review. Section 1410 states "except as expressly authorized by sections [1407, 1408, and 1409], the *compliance or noncompliance* with the provisions of this Act and any action taken pursuant to this Act shall not be subject to judicial review." *Id*. at § 1410 (emphasis added).[2] Instead, Congress vested all oversight of the Office of Compliance with legislative committees. *Id*. at § 1381(i). Third, Congress made clear that none of the jurisdictional grants in the CAA "constitute a waiver of sovereign immunity for any other purpose, or of the privileges of any [member of Congress] under [the Speech or Debate Clause], or a waiver of any [other] power . . . under the Constitution." *Id*. at § 1413.

Fourth, and perhaps most significantly, Congress mandated strict confidentiality of the pre-litigation process. Section 1416 provides that both counseling and mediation "shall be strictly confidential." 2 U.S.C. § 1416(a)-(b). The only statutory exception to this strict confidentiality is that, with respect to counseling, "the Office and a covered employee may agree to notify the employing office of the allegations." *Id*. at § 1416(a). The Office Rules clarify this exception, stating such a waiver of confidentiality may only be "*for the limited purpose* of contacting the

---

[2]Section 1407 provides for judicial review by the Court of Appeals for the Federal Circuit of final decisions reached by the Office of Compliance in cases where a complainant elected to file an administrative complaint rather than a civil action. Section 1408, of course, provides for district court jurisdiction over civil actions commenced after the pre-litigation requirements have been met. Section 1409 provides for very limited judicial review of regulations issued pursuant to the CAA.

8

employing office to obtain information to be used in counseling the employee or to attempt a resolution of any disputed matter(s)," and any such waiver "must be written on the form supplied by the Office and signed by both the counselor and the employee." OC Rule 2.03(e)(2) (emphasis added). Additionally, a separate provision of the CAA categorically shields the mediator from "subpoena or any other compulsory process." 2 U.S.C. § 1403(d). The confidentiality provisions demonstrate "Congress understood what courts and commentators acknowledge, namely, that confidentiality plays a key role in the informal resolution of disputes." *Blackmon-Malloy II*, 575 F.3d at 711.

These four factors, taken together and viewed in light of the provisions requiring the Office of Compliance to issue written notices at the end of counseling and mediation, signal Congress's intent that courts not "peer into" the details of the pre-litigation steps, but instead rely on the official, non-confidential notices to establish the completion of these steps. Such was the conclusion of the Court of Appeals for the D.C. Circuit when it reversed the district court's holding that receipt of end-of-mediation notices did not conclusively establish completion of mediation for purposes of federal jurisdiction under § 1408. The district court had opined that "[i]n issuing the notices of the end of mediation, the Office of Compliance was not interpreting whether mediation had been completed, but rather, the Office was performing a purely ministerial task as mandated by the CAA." *Blackmon-Malloy v. United States Capitol Police Bd.* ("*Blackmon-Malloy I*"), 338 F. Supp. 2d 97, 30 (D.D.C. 2004). Thus, the court reasoned, the end-of-mediation notice "[wa]s not entitled to any deference [by the court]." *Id.* The Court of Appeals disagreed, concluding the statutorily-mandated "strict confidentiality" of the mediation process "indicates Congress's intent that the end of mediation notice serves to demonstrate an employee's completion of the process." *Blackmon-*

9

*Malloy II*, 575 F.3d at 711. Moreover, "[n]othing in the CAA suggests Congress intended courts to engage in a mini-trial on the content of the counseling and mediation sessions, an inquiry that would be fraught with problems." *Id*. Instead, courts must take the end-of-counseling and end-of-mediation notices as "document[ing] completion of counseling and mediation." *Id*. at 714.

Although the Court of Appeals in *Blackmon-Malloy II* was reviewing a district court's "peering into" the mediation process, not the counseling process, this Court finds its reasoning applicable and instructive to the case at bar. Looking beyond the official notices of the Office of Counseling to try to determine what "really" occurred during counseling would be an endeavor "fraught with problems." Not only would it entail the Court's disrupting the "strict confidentiality" Congress apparently thought was crucial to the efficacy of the pre-litigation process, it also could entangle the Court in the inner workings of Office of Compliance. Discovering what claims and issues were actually addressed in counseling would not always be a simple matter of reviewing an employee's self-identified "Formal Request for Counseling," as Plaintiff urges the Court to do here. After all, an employee unversed in labor and employment law might list only two claims on her request for counseling, but might subsequently learn during counseling that she can actually assert a third claim against her employer. Conversely, an employee's request for counseling might contain a laundry list of claims, some of which she might jettison during counseling after learning the elements and realizing the facts cannot support the claims. In order to determine which claims an employee truly completed counseling for, the Court might have to subpoena records from the Office of Compliance, subpoena testimony from counselors employed by the Office, and perhaps even determine whether a counselor was at fault for failing to recognize and instruct an employee on additional claims her facts might support. Moreover, the Court would have to determine what level

10

of engagement constitutes "completing counseling" with respect to a particular violation. Would a two-hour counseling session in which gender discrimination was exclusively discussed, save for a ten-second colloquy at the end where the employee asked "Does the fact that I'm left-handed mean I also have a claim for disability discrimination?" and the counselor answered "no," count as completing counseling for both gender discrimination and disability discrimination? If not, what is the threshold where "mentioning" an issue becomes "completing counseling" on the issue? These are questions courts might plausibly have to answer if they do not take at face value the notices issued by the Office of Compliance.

This level of judicial involvement in the internal affairs of the Office of Counseling would clearly be at odds with Congress's narrow grant of district court jurisdiction, *see* 2 U.S.C. § 1410 ("[e]xcept as expressly authorized by [§§ 1407, 1408, and 1409], the compliance or noncompliance with the provisions of this Act and any action taken pursuant to this Act shall not be subject to judicial review"), not to mention Congress's complete vesting of all oversight of the Office of Compliance with legislative committees. *See id*. at § 1381(i). The CAA envisions maximal retention of responsibility by the legislative branch and a minimal judicial role. Were the Court to venture beyond the representations made by the Office of Counseling in its notices in order to determine what "really" occurred in counseling, this ratio would be turned on its head. Accordingly, the Court concludes it must determine the "violation[s] for which the employee has completed counseling" solely by reference to the notices from the Office of Compliance.

## V.  ANALYSIS

In this case, the Court has before it three notices issued by the Office of Compliance. The

first, sent only to Plaintiff and dated April 3, 2009, informs her that the "counseling period on your allegation of violation of the Congressional Accountability Act (CAA)" ended on April 2, 2009 (Court File No. 36-3, p. 1). It does not say anything more specific about the substance of the claims for which Plaintiff had completed counseling. The notice also informs her how to proceed to the next stage of mediation.

The second notice, addressed to the Office of House Employment Counsel and dated April 14, 2009, states in relevant part:

> This is to notify you that the above identified individual [i.e., Plaintiff] requested mediation on April 13, 2009. The Federal Mediation and Conciliation Service will designate a mediator for this matter. We will be in contact with you after the designation is made.
>
> Shirley Taylor formally requested counseling on April 13, 2009 [sic][3], alleging *that she is subject to unfair terms and conditions of employment, a hostile work environment, and is forced to retire because of age, in violation of section 201 of the Congressional Accountability Act.*

(Court File No. 31-2, p. 2) (emphasis added). The notice goes on to describe some details of the upcoming mediation process.

The third notice, dated May 15, 2009, is addressed to Plaintiff's counsel, and states that "the mediation period has ended in the above matter without a resolution of your client's claims" (Court File No. 31-3, p. 2). This notice, like the first, does not say anything specific about the substance of Plaintiff's claims. The notice goes on to provide details about Plaintiff's right to elect to file a formal complaint with the Office of Compliance, or a civil complaint in district court.

The only one of these notices to specifically list the claims for which Plaintiff underwent

---

[3]This was a typo. April 13, 2009 was the date Plaintiff requested mediation. March 2, 2009 was the date she requested counseling.

counseling is the second. It describes allegations of age discrimination ("she is subject to unfair terms and conditions of employment, a hostile work environment, and is forced to retire because of age") (Court File No. 31-2, p. 2). It says nothing whatsoever about allegations of disability discrimination. The second notice's prose description of Plaintiff's allegations is consistent with the case number the Office of Compliance assigned to Plaintiff, and which appears on all three notices: "09-HS-48 (AG)". The Office of Compliance explained its case-naming methodology in a memorandum to the district court in *Blackmon-Malloy I*:

> After receiving a Request for Counseling, the [Office of Counseling] assigns the matter a case number, which includes, in parenthesis, paired initials corresponding to the types of violations alleged. The [Office] uniformly identifies allegations under Title VII of the Civil Rights Act of 1964 as "CV"; allegations under the Family and Medical Leave Act as "FM"; allegations under the Americans with Disabilities Act as "DA"; allegations under the Age Discrimination in Employment Act as "AG"; and allegations of retaliation under Section 207 of the CAA as "RP". For example, a case caption carrying the number "04-CP-30 (AG, RP)" would signify that the employee presented allegations of age discrimination under section 201 and retaliation under section 207 of the CAA.

(Court File No. 37-1, p. 7). Thus, according to the Office of Compliance's naming methodology, Plaintiff's case number signifies she alleged age discrimination ("AG"), but no other violations such as disability discrimination ("DA"). Considering this evidence along with the second notice's prose description of Plaintiff's allegations, the Court interprets the notices to state Plaintiff completed counseling solely for alleged age discrimination. Because the Court is bound to look only to the notices to determine the violations for which Plaintiff completed counseling, the Court concludes Plaintiff did not complete counseling for alleged disability discrimination.[4]

---

[4] The Court understands that a few lines on a notice and initials in a case number may be less evidence than one would ideally wish subject matter jurisdiction in a case turned on. However, the alternative proposed by Plaintiff would have jurisdiction turn on even less. Besides her own affidavit, the one piece of evidence relied upon by Plaintiff is her unverified copy of the document

13

## VI. CONCLUSION

Because Plaintiff did not complete counseling for disability discrimination, the jurisdictional prerequisites of 2 U.S.C. § 1408 are not met with respect to the disability discrimination claim stated in Count Two of the complaint. Accordingly, the Court will **GRANT** Defendant's motion to dismiss Count Two of the complaint (Court File No. 30), and consequently will **ORDER** Plaintiff's request for compensatory damages be stricken from the complaint.

An Order Shall Enter.

**/s/**
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**

---

she allegedly sent the Office of Compliance to initiate counseling. This document contains a time-line of alleged violations, all of which involve age discrimination only. At the bottom of the document, completely outside of the above time-line and apparently added as an afterthought, is a note stating that a year-and-a-half ago Plaintiff's supervisor spread a rumor that she had Alzheimer's Disease. Nothing indicates Plaintiff regarded this old rumor as an instance or evidence of disability discrimination, or even that she thought it bore relevance to her termination. In fact, viewed in the context of the rest of the document, which repeatedly references age discrimination, the most plausible interpretation is that Plaintiff simply regarded the Alzheimer's rumor as evidence of her employer's benighted and biased view of her seniority. At any rate, for the Court to determine the precise violations for which Plaintiff completed counseling on the basis of her own unclear and unauthenticated note rather than the official, if laconic, notices issued by the Office of Compliance would be to forego small but certain evidence in favor of smaller, questionable evidence.